**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION**

| | | |
|---|---|---|
| JOSEPH CHRISTOPHER ROBERTS, | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Civil Action No. 1:08-cv-406 |
| | § | |
| | § | |
| RODNEY G. COLE, II, INDIVIDUALLY | § | |
| AND IN HIS OFFICIAL CAPACITY, | § | |
| JOHNNY LYNN VICKERY JR., | § | |
| INDIVIDUALLY AND IN HIS OFFICIAL | § | |
| CAPACITY AND JEFFERSON COUNTY, | § | |
| Defendants. | § | |

**<u>Plaintiff Joseph Roberts' Second Amended Complaint</u>**

COMES NOW Plaintiff, Joseph Roberts, and files this, his Second Amended Complaint, and for cause of action would respectfully show as follows:

**<u>I. PARTIES</u>**

1.      Plaintiff Joseph Roberts is a resident of Port Arthur, Jefferson County, Texas.

2.      Defendant Rodney G. Cole, II is a resident of Beaumont, Jefferson County, Texas.  Cole may be served with process by serving him at his residence, 5480 Hamilton Dr., Beaumont, Texas 77708.

3.      Defendant Johnny Lynn Vickery, Jr. is a resident of Port Neches, Jefferson County, Texas.  Vickery may be served with process by serving him at his residence, 1709 8th St., Port Neches, Texas 77651.

4.      Defendant Jefferson County ("the county") has appeared and answered.

**<u>II.  JURISDICTION</u>**

5.      This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. §1331, because the claims involve a question of federal law under 42 U.S.C. §1983.  This Court further

has pendant and ancillary jurisdiction over the related state-law claims pursuant to 28 U.S.C. § 1367 (a).

## III.  VENUE

6.      Venue is proper in this cause in the Eastern District of Texas pursuant to 28 U.S.C. §1391(a)(2) because all or substantial part of the events which gave rise to this cause of action occurred in the Eastern District of Texas.

## IV.  FACTS

7.      On April 5th, 2007 Joseph Roberts was arrested by Officer Fontenette of the Jefferson County Sheriff's Department for an outstanding traffic warrant.  Mr. Roberts was transported to the Jefferson County Jail without incident.  As he was being processed, Rodney Cole began a search of Joseph.  Without justification, Cole punched Joseph twice in the face and then slammed his head into the booking counter.  The beating administered by Cole on Joseph was severe enough to require stitches and was captured on the facility's video surveillance camera.  There were several other officers present that witnessed the incident, yet none intervened or seemed the slightest bit disturbed by what was happening.  In fact, it appears that the beating Cole administered to Joseph was an accepted practice.

8.      Roberts was then placed in a holding cell; he had not received any medical treatment and was bleeding profusely from his mouth.  Roberts was then taken out of the holding cell for photographs and fingerprinting.  Roberts was handcuffed and brought to the booking counter; he was to be released on a personal bond for medical treatment.

9.      As Joseph was being released for medical treatment, he bled and/or spit blood on the release papers.  In response, Defendant Johnny Lynn Vickery, Jr., also an officer with

the Jefferson County Sheriff's Department, further assaulted Joseph. Vickery grabbed Joseph and threw him into a wall. He then took the bloody release papers and grinded them into Roberts' hair. This attack, like the previous attack by Cole, was unjustified; Joseph was handcuffed at the time and posed no threat to Vickery or the public. Again, as in the first assault, several officers stood watching the incident; two were apparently so pleased with the events that they "high-fived" each other. Other officers just laughed at Joseph and the situation; it is clear from the responses of the observing officers that Vickery's behavior was typical for Jefferson County.

10.     Officers Cole and Vickery, acting under color of state law and pursuant to a widespread custom and practice of the Jefferson County Sheriff's Department, unconstitutionally deprived Plaintiff of his right to be free from unreasonable seizures, and subjected him to summary punishment, cruel and unusual punishment and excessive force.

11.     These assaults were captured on video tape. The Jefferson County Sheriff's Department tacitly approved of the Officer's unconstitutional acts, which were committed pursuant to Jefferson County Sheriff Department policy, prior to the incident. The Sheriff's department only took corrective action after it was apparent that it could not avoid responsibility for the incident.

## V.  CAUSES OF ACTION

### Rodney G. Cole, II, Individually

**A.     Violations of 42 U.S.C. § 1983 – Excessive Force in Violation of Plaintiff's Fourth and Fourteenth Amendment Rights**

12.     Cole, while acting under the color of state law as a uniformed police officer for Jefferson County, deprived Joseph Roberts of rights secured to him by the Constitution

of the United States of America.  Cole assaulted Joseph while he was in custody; a video tape clearly shows that Joseph made no threatening movements prior to the assault. Cole's actions showed conscious indifference to a right to be free of unreasonable seizure, as guaranteed by the 4th Amendment, which was well-known to Cole at the time.

13.    Joseph posed no threat to the officers, jail staff or the public when he was assaulted.  No reasonable officer or person in Cole's position would have thought the force brought to bear was necessary to prevent imminent harm to him or the public. Joseph was unarmed throughout the incident and when Cole assaulted him.  Moreover, no reasonable officer would have thought it necessary to punch Joseph twice in the face and slam his head into the counter to prevent imminent harm, as Joseph was not resisting when he was assaulted.  This assault also constitutes a cause of action under Texas civil law.

14.    Cole's actions constitute conscious indifference to Joseph's rights under the 4th Amendment of the U.S. Constitution and his conscious indifference to those rights was the producing and proximate cause of Joseph's injuries.  The force Cole used was greatly in excess of what the situation required and his actions are shocking to the collective conscience of the Jefferson County community.

15.    Cole's actions were taken pursuant to a custom and practice of Jefferson County that is so widespread as to have the force of law.  The constitutional deprivations described above were witnessed by policy makers for Jefferson County; despite a host of other officers being present to witness Cole's acts, none took any steps to prevent or correct the harm.  To a person, everyone Jefferson County employee who witnessed the

incident acted as though constitutional violations of this type are the custom and practice of Jefferson County.

**B.    Violations of 42 U.S.C. § 1983 – Summary Punishment in Violation of Plaintiff's 14th Amendment Rights**

16.    The preceding paragraphs are incorporated by reference.

17.    Every citizen of the United States is guaranteed due process of law prior to loss of life, liberty or property by the 14th Amendment to the U.S. Constitution.  Cole assaulted Joseph after Joseph was subdued and in custody.  Cole took it upon himself to punish Joseph by punching him repeatedly in the face and slamming his face into the booking counter.

18.    Cole acted under color of state law when he assaulted Joseph.  Cole's actions demonstrated his conscious indifference to Joseph's right to due process.   Cole's conscious indifference to Joseph's rights under the 14th Amendment was the proximate and producing cause of Joseph's injuries.  This assault also constitutes a cause of action under Texas civil law.

19.    No reasonable officer could have believed it was reasonable to assault an unarmed man in the situation presented to Cole.  At the time he was assaulted, Joseph posed no threat to the officer or the public; he had already submitted to custody and made no threatening moves to provoke Cole.  Regardless of how angry Joseph made Cole during the booking procedure, Joseph deserved and was guaranteed due process prior to punishment.

20.    Cole's actions were taken pursuant to a custom and practice of Jefferson County that is so widespread as to have the force of law.  The constitutional deprivations described above were witnessed by policy makers for Jefferson County; despite a host of

other officers being present to witness Cole's acts, none took any steps to prevent or correct the harm.  To a person, everyone Jefferson County employee who witnessed the incident acted as though constitutional violations of this type are the custom and practice of Jefferson County.

**C.      Violations of 42 U.S.C. § 1983 – Failure to Provide Medical Aid in Violation of Plaintiff's Fourth and Fourteenth Amendment Rights**

21.     Plaintiff hereby incorporates the preceding paragraphs by reference.

22.     Once a person is in police custody, the custodial officer has a duty to provide for his safety and secure medical aid for the person if he is injured.  Cole violated Joseph's Fourth and Fourteenth Amendment rights by failing to secure medical attention for Joseph immediately after punching him four times.  It appears that Cole intended for Joseph to suffer and refusal to promptly secure medical attention was a further step in that plan and constituted conscious indifference to Joseph's known constitutional rights.  Cole's failure to secure medical attention for Joseph in a timely fashion was the proximate and producing cause of Joseph's injuries.

23.     Cole's actions were taken pursuant to a custom and practice of Jefferson County that is so widespread as to have the force of law.  The constitutional deprivations described above were witnessed by policy makers for Jefferson County; despite a host of other officers being present to witness Cole's acts, none took any steps to prevent or correct the harm.  To a person, everyone Jefferson County employee who witnessed the incident acted as though constitutional violations of this type are the custom and practice of Jefferson County.

**D.      Violations of 42 U.S.C. § 1983 8th Amendment - Cruel and Unusual Punishment**

24.     Plaintiff hereby incorporates the preceding paragraphs by reference.

25.     Because Joseph Roberts was in custody while he was assaulted by Cole, Cole violated Joseph's Eighth-Amendment right to be free of cruel and unusual punishment. While it is granted that in a custodial setting, not every push or shove constitutes excessive force or cruel and unusual punishment, the force used by Cole was of such a degree as to shock the conscience of the community and the Court.  Specifically, there was no need to use any force at all against Joseph when Cole repeatedly punched him and slammed his head into the booking counter.  Cole's actions were grossly disproportionate to the need under the circumstances and were motivated by malice and for the very purpose of causing harm.  Cole's actions were not in good faith.  Plaintiff suffered injury as result of Cole's unconstitutional, cruel and unusual punishment. This assault also constitutes a cause of action under Texas civil law.

26.     Further, Cole's actions were taken pursuant to a custom and practice of Jefferson County that is so widespread as to have the force of law.  The constitutional deprivations described above were witnessed by policy makers for Jefferson County; despite a host of other officers being present to witness Cole's acts, none took any steps to prevent or correct the harm.  To a person, everyone Jefferson County employee who witnessed the incident acted as though constitutional violations of this type are the custom and practice of Jefferson County.

**Johnny Lynn Vickery, Jr., Individually**

A.     **Violations of 42 U.S.C. § 1983 – Excessive Force in Violation of Plaintiff's Fourth and Fourteenth Amendment Rights**

27.     Johnny Lynn Vickery, while acting under the color of state law as a uniformed police officer for the Jefferson County, deprived Joseph of rights secured to him by the

Constitution of the United States of America.  Vickery assaulted Plaintiff while he was in custody; the video tape clearly shows that Joseph made no threatening movements prior to the assault.  Joseph was handcuffed at the time and incapable of defending himself or posing any threat to Vickery or the public.  Vickery's actions showed conscious indifference to a right to be free of unreasonable seizure, as guaranteed by the 4th Amendment, which was well-known to Vickery at the time.

28.     Joseph posed no threat to the officers, jail staff or the public when he was assaulted.  No reasonable officer or person in Vickery's position would have thought the force brought to bear was necessary to prevent imminent harm to him or the public. Roberts was unarmed throughout the incident and harmlessly incapacitated when Vickery assaulted him.  Moreover, no reasonable officer would have thought throwing a restrained detainee into a wall would be necessary to prevent imminent harm, as Robert was not resisting when he was assaulted.   There is no justification for smearing a bloody paper in Plaintiff's hair; Vickery was obviously angry and failed to act with restraint.

29.     Vickery's actions constitute conscious indifference to Plaintiff's rights under the 4th Amendment of the U.S. Constitution and his conscious indifference to those rights was the producing and proximate cause of Plaintiff's injuries.  The force Vickery used was greatly in excess of what the situation required and his actions are shocking to the collective conscience of the Jefferson County community. This assault also constitutes a cause of action under Texas civil law.

30.     Further, Vickery's actions were taken pursuant to a custom and practice of Jefferson County that is so widespread as to have the force of law.  The constitutional deprivations described above were witnessed by policy makers for Jefferson County;

despite a host of other officers being present to witness Vickery's acts, none took any steps to prevent or correct the harm.  To a person, everyone Jefferson County employee who witnessed the incident acted as though constitutional violations of this type are the custom and practice of Jefferson County.

**B.     Violations of 42 U.S.C. § 1983 – Summary Punishment in Violation of Plaintiff's 14th Amendment Rights**

31.     The preceding paragraphs are incorporated by reference.

32.     Every citizen of the United States is guaranteed due process of law prior to loss of life, liberty or property by the 14th Amendment to the U.S. Constitution.  Vickery assaulted Roberts after Roberts was subdued and in custody.  Vickery took it upon himself to punish Robert by throwing him into a wall and smearing the bloody release papers in his hair.

33.     Vickery acted under color of state law when he assaulted Roberts.  Vickery's actions demonstrated his conscious indifference to Plaintiff's right to due process. Vickery's conscious indifference to Roberts' rights under the 14th Amendment was the proximate and producing cause of Plaintiff's injuries.

34.     No reasonable officer could have believed it was reasonable to assault an unarmed man in the situation presented to Vickery.  At the time he was assaulted, Roberts posed no threat to the officer or the public; he had already submitted to custody and made no threatening moves to provoke Vickery.  Regardless of how angry Roberts made Vickery during the release procedure, Robert deserved and was guaranteed due process prior to punishment.  This assault also constitutes a cause of action under Texas civil law.

35.     Further, Vickery's actions were taken pursuant to a custom and practice of Jefferson County that is so widespread as to have the force of law.  The constitutional

deprivations described above were witnessed by policy makers for Jefferson County; despite a host of other officers being present to witness Vickery's acts, none took any steps to prevent or correct the harm.  To a person, everyone Jefferson County employee who witnessed the incident acted as though constitutional violations of this type are the custom and practice of Jefferson County.

**C.      Violations of 42 U.S.C. § 1983 – Failure to Provide Medical Aid in Violation of Plaintiff's Fourth and Fourteenth Amendment Rights**

36.      Plaintiff hereby incorporates the preceding paragraphs by reference.

37.      Once a person is in police custody, the custodial officer has a duty to provide for his safety and secure medical aid for the person if he is injured.  Vickery violated Plaintiff's Fourth and Fourteenth-Amendment rights by failing to secure medical attention for Roberts immediately after assaulting him.  Vickery's failure to secure medical attention for Robert in a timely fashion was the proximate and producing cause of Robert's injuries.

38.      Further, Vickery's actions were taken pursuant to a custom and practice of Jefferson County that is so widespread as to have the force of law.  The constitutional deprivations described above were witnessed by policy makers for Jefferson County; despite a host of other officers being present to witness Vickery's acts, none took any steps to prevent or correct the harm.  To a person, everyone Jefferson County employee who witnessed the incident acted as though constitutional violations of this type are the custom and practice of Jefferson County.

**<u>The County</u>**

**A.      Violations of 42 U.S.C. § 1983 – Policy and Procedure of Excessive Force and Cruel and Unusual Punishment**

39.     The preceding paragraphs are hereby incorporated by reference.

40.     Jefferson County and its police force have a policy of using excessive force and subjecting their detainees to cruel and unusual punishment; this is clear from the reactions of the other police officers that witnessed the assaults against Plaintiff.  Those officers acted as though the assault perpetrated on Plaintiff was a common occurrence. While Jefferson County surely did not have a written policy requiring the use of excessive force, it is apparent that excessive force is standard procedure for Jefferson County officers.  Jefferson County only took corrective action after it was apparent it could not avoid responsibility due to the assault being recorded.   By tacitly approving of excessive force and its proclivity to "turn a blind eye" to gross violations of constitutional rights, Jefferson County has created a policy of brutality and excessive force.  This practice is so pervasive as to have the force of law.

41.     This policy of brutality, excessive force and cruel and unusual punishment demonstrates a conscious indifference to the rights secured our citizens by the Fourth, Eighth and Fourteenth Amendments of the U.S. Constitution.  Officers Cole and Vickery were acting pursuant to and in conformity with this policy when they separately and individually beat Plaintiff.  The foregoing policy was the proximate and producing cause of Plaintiff's injuries.

**B.     Violations of 42 U.S.C. § 1983 – Policy and Procedure:  Failure to Adequately Train**

42.     The preceding paragraphs are hereby incorporated by reference.

43.     The Jefferson County Sheriff's Department failed to adequately train its officers in the following areas:

        a.      proper escalation of force,

b.      the use of excessive force,

c.      the illegality of excessive force,

d.      the constitutional limits of the use of force,

e.      the necessity and proper limits of force in a custodial setting; and

e.      how to properly and dispassionately confront suspects that have angered the officer.

44.     This policy of failing to adequately train its officers shows a conscious indifference to the rights secured by the Fourth, Eighth and Fourteenth Amendments to the citizens of Jefferson County and Plaintiff in particular.  The County's failure to properly train its officers is so reckless that misconduct by its officers was inevitable.  This policy of inadequate training was a producing and proximate cause of Plaintiff's injuries and is so pervasive as to have the force of law.

**C.      Violations of 42 U.S.C. § 1983 – Policy and Procedure: Failure to Adequately Supervise**

45.     The Jefferson County Sheriff's Department has a practice of failing to properly supervise its officers.  This policy includes both the failure to inquire into the officers' daily activities and the County's failure to reprimand its officers for the use of excessive force.  Failing to supervise, like failing to reprimand, has resulted in tacit approval of excessive force; if no one is watching the officers and the officers are not punished for excessive force, then it is reasonable for the officers to assume that those actions are accepted by Jefferson County; these assaults were witnessed and approved by supervisors and policy makers.  The Jefferson County Sheriff's Department only took corrective action because the video tape ensured it could not ignore the attacks on Joseph.   This practice is so widespread that officers do not fear punishment.  The failure of county

officials to properly supervise its officers is so rampant that the practice has the force of law; this practice was the proximate and producing cause of Plaintiff's injuries.

**D.      Violations of the Texas Tort Claims Act**

46.     The preceding paragraphs are hereby incorporated by reference as if set forth in full.

47.     This cause of action is advanced against Jefferson County in the alternative. Defendant's conduct toward Plaintiff violated the Texas Tort Claims Act, TEX. CIV. PRAC. & REM. CODE § 101.001 *et seq.*

48.     Jefferson County's negligence, including but not limited to its failure to train and supervise Cole and Vickery, and the negligence of its agents, Cole and Vickery, who were acting in the course and scope of their employment for Jefferson County at the time of the assaults, injured Plaintiff causing him physical injury, pain and suffering, mental anguish and humiliation.  Jefferson County is vicariously liable for its agents negligent acts.

49.     Plaintiff's damages, which were proximately caused by Jefferson County and its agents, Cole and Vickery, were caused by the use of tangible personal property. Specifically, Cole used the booking counter and Vickery used handcuffs, the wall of the jail and the release papers to injure Plaintiff.  The personal property at issue contributed to Plaintiff's injuries and damages.

## VI.  DAMAGES

50.     As a result of the above-noted violations, Plaintiff incurred significant damages. His dignity and faith in the civil servants of Jefferson County have been irreparably destroyed.  Plaintiff also suffered significant physical pain; he was punched several times

in the face and then, while in handcuffs, was thrown into a wall.  Joseph also suffered, and continues to suffer, significant mental anguish and distress and has lost significant wages.  Moreover, Plaintiff is entitled to punitive damages from Cole and Vickery, as their actions were clearly motivated by anger, malice and evil motive.  Plaintiff is further entitled to attorney's fees, costs of suit and prejudgment interest.

## VII.  PRAYER

51.     Plaintiff prays that, upon trial before a jury of his peers, that he be granted the relief set forth above and all other relief to which he shows himself justly entitled in law and equity.

Respectfully Submitted,

/s/ *Derek Merman* _____
Derek Merman, Attorney in Charge
State Bar No. 24040110
Merman & Dunk, LLP
723 Main St. Ste. 1020
Houston, Texas 77002
Tele:   713-223-1435
Fax:    713-223-1438

ATTORNEY FOR PLAINTIFF

### Certificate of Service

The undersigned attorney hereby certifies that the foregoing instrument was served by facsimile, regular mail and/or certified mail on the 23rd day of February, 2009 to the following counsel of record:

**Attorney for Jefferson County**
Steven Wiggins
Thomas F. Rugg
1001 Pearl Street
Beaumont, Texas 77701
Phone:   409-835-8550
Fax:      409-784-5893

/s/ *Derek Merman*_____
Derek Merman

### Certificate of Conference

Counsel for Plaintiff discussed Plaintiff's First Amended Complaint with counsel for Defendant on the 23rd day of February, 2009.   Counsel for Defendant Jefferson County is **unopposed** to Plaintiff filing his Amended Complaint.

**Attorney for Jefferson County**
Steven Wiggins
Thomas F. Rugg
1001 Pearl Street
Beaumont, Texas 77701
Phone:   409-835-8550
Fax:      409-784-5893

/s/ *Derek Merman*_____
Derek Merman